UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

James R. Maddux,

    Plaintiff,                                   Case Action No.: 1:08cv442

    v.                                           Judge Michael R. Barrett

United States of America, et al.,

    Defendants.

## ORDER

This matter came before the Court pursuant to Defendant, United States of America's ("United States"), motion to dismiss and for summary judgment (Doc. 50). The motions have been briefed and are ripe for review.

    A.    Relevant Facts

Plaintiff was employed as a seaman on the *M/V 1ˢᵗ Lieutenant Alex Bonnyman* ("*Bonnyman*" or "vessel"). Plaintiff was injured while the vessel was docked in Guam. (Doc. 44, ¶8). While returning from shore leave, Plaintiff fell from a stairway and into a safety net which was defective and improperly rigged causing Plaintiff to fall fifteen feet to the deck below. Plaintiff suffered a complete spinal cord injury at T10-12 and has been rendered a paraplegic. (Id. at ¶9).

Plaintiff alleges that the Defendants are liable for his injuries pursuant to the Jones Act, the Public Vessels Act, the Suits in Admiralty Act and the general maritime law of the United States, or in the alternative the Longshore and Harbor Workers' Compensation Act. (Id. at ¶10). Specifically, Plaintiff alleges that the United States was negligent in its own right and through the acts and omissions of its agents, Honeywell

Technology Solutions, inc., Maersk Line, Ltd. and Expresser Transport Corp. (Id. at ¶11) and that the *Bonnyman* was unseaworthy. (Id. at ¶17). Plaintiff also alleges that the *Bonnyman* was owned by the United States and operated by its agents, Honeywell Technology Solutions, Inc., Maersk Line, Ltd. and Expresser Transport Corp. (Id.).

Plaintiff seeks damages for maintenance, cure, unearned wages, attorneys fees and punitive damages. The United States argues that the Second Amended Complaint (Doc. 44) is untimely. And even if it is not untimely, that due to the United State's status as a time charter it is not liable for Plaintiff's injuries.

B.  Legal Standards

A motion to dismiss pursuant to Rule 12 (b)(6) operates to test the sufficiency of the complaint. The court is required to construe the complaint in the light most favorable to the Plaintiff, and accept all well-pleaded factual allegations in the complaint as true. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) and *Lewis v. ACB Business Services*, 135 F.3d 389, 405 (6th Cir. 1998). A court, however, will not accept conclusions of law or unwarranted inferences which are presented as factual allegations. *Blackburn v. Fisk University*, 443 F.2d 121, 124 (6th Cir. 1974). A complaint must contain either direct or reasonable inferential allegations that support all material elements necessary to sustain a recovery under some viable legal theory. *Lewis v. ACB*, 135 F.3d at 405 (internal citations omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted);

*Association of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the non-moving party. *Id.* at 252.

    C.    Analysis

        1.    Motion to Dismiss

Plaintiff originally filed this action on June 26, 2007, naming the United States as a party. However, after communications with counsel for the United States regarding its position as to this matter, Plaintiff voluntarily dismissed the United States on January 15, 2009. (See Doc. 23). Counsel for the United States had provided documentation

that it believed supported its position that it was a time charter and not liable for Plaintiff's damages. Apparently some time later, Plaintiff became concerned about the necessity of the United States as a party to this action and, on July 20, 2009, requested leave of court to file a second amended complaint again adding the United States as a defendant. Such leave was granted on August 14, 2009.

The United States argues that because Plaintiff voluntarily dismissed it from the original complaint its as if that complaint had never been filed against the United States and does not toll the statute of limitations, which is two years. *See Davis v. Smith's Transfer, Inc.*, 841 F.2d 139, 140 (6th Cir. 1988); 46 U.S.C. §30905. Since the Second Amended Complaint was filed more than two years after Plaintiff's injury, the United States argues that the statute of limitations has expired. Plaintiff argues that the Second Amended Complaint relates back to the original complaint. Fed. R. Civ. P. 15(c) provides the following:

> (1) When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:
> (A) the law that provides the applicable statute of limitations allows relation back;
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.
> (2) Notice to the United States. When the United States or a United States officer or agency is added as a defendant by amendment, the notice requirements of Rule 15(c)(1)(C)(i) and (ii) are satisfied if, during the stated period, process was delivered or mailed to the United States

attorney or the United States attorney's designee, to the Attorney General of the United States, or to the officer or agency.

Plaintiff cites *Black-Hosang v. State of Ohio*, 96 Fed. Appx. 372 (6th Cir. 2004), wherein the Sixth Circuit found that Fed. R. Civ. P. 15(c)'s reference to a "mistake concerning the proper party's identity" includes such legal mistakes as that of naming an immune institutional defendant rather than an individual one. However, that is not the situation here. No new information as come to the attention of Plaintiff between when the original complaint was filed naming the United States, when Plaintiff voluntarily dismissed the United States, and when the Plaintiff filed its Second Amended Complaint again naming the United States. The same reasons counsel for the United States gave Plaintiff as to why the United States should not be a party to this litigation, which led to the voluntarily dismissal of the United States, are still the same arguments raised by the United States on the issue of no liability. Here, there is no evidence of any "mistake concerning the identity of the proper party." Plaintiff has been aware of the identity of the United States since the filing of the original complaint. Moreover, there is no evidence that the Plaintiff should be entitled to equitable tolling as there has been nothing presented to show Plaintiff was prevented from timely filing the Second Amended Complaint. *See Ayers v. United States*, 277 F.3d 821, 828-29 (6th Cir. 2002).

Thus, Plaintiff's Second Amended Complaint is untimely as to the United States.

2. Motion for Summary Judgment

However, even if the Court were to find that the Second Amended Complaint was timely, it would still fail on the merits as to the United States. The United States has also moved for summary judgment arguing that it was merely a time charter of the

*Bonnyman* and not responsible for the care and maintenance of the vessel. The Court agrees.

a. Suit in Admiralty Act

The Suit in Admiralty Act ("SIAA"), 46 U.S.C. §30901 et seq., provides a limited waiver of sovereign immunity to allow *in personam* admiralty actions against the United States in certain circumstances. 46 U.S.C. §30903. The SIAA provides that "if a remedy is provided by this chapter, it shall be exclusive of any other action arising out of the same subject matter against the officer, employee, or agent of the United States ... who act or omission gave rise to the claim." 46 U.S.C. §30904. However, for the reasons more fully set forth below, the SIAA is not applicable to this action since there is no evidence to show that an officer, employee or agent of the United States conducted any actions or omission that gave rise to the claim. In other words, the United States is not susceptible to a "traditional admiralty claim" under the particular circumstances of this case. *See Padro v. Vessel Charters, Inc.*, 731 F. Supp. 145, 147 (1990) citing *Williams v. Central Gulf Lines*, 874 F. 2d 1058 (5th Cir. 1989).

The United States, through the Contracting Officer of the Military Sealift Command for the Department of the Navy, entered into a time charter agreement with Expresser Transport Corporation ("Expresser"), who has a demise charter as to the *Bonnyman*. (See Doc. 50-2, p3).

> There are three classes of charter parties, in two of which the vessel is always let or hired for an agreed period of time. (a) a demise; (b) a time charter, or ordinary hiring of the vessel, not constituting a demise; (c) voyage charter, or contract of affreightment. The demise and ordinary time charter are alike in that, under both forms, the vessel is let or hired for an agreed period of time, and hire is to be paid, at a specified rate, from the beginning to the end of the charter period, unless there is some express

> exception providing for suspension of hire. The principal difference between the two forms is that under a demise the ship's officers and crew become, even in matters of navigation and care of the vessel, the agents of the charterer, while under an ordinary time charter the officers and crew remain the agents of the owner with respect to the navigation and care of the ship.

*United States v. Cornell S. B. Co.*, 267 U.S. 281 (Syllabus) (U.S. 1925). Here it is clear that the United States and Expresser entered into a contract whereby the United States would be a time charter with no responsibility for the crew and maintenance of the *Bonnyman*. (Doc. 50-2, Art. 21(j); Doc. 50-2, Art. 35). The general rule of law is that a time charterer is not liable for the unseaworthiness of a vessel or the negligence of the crew or owner unless it is clearly shown that the parties intended otherwise. *In re P & E Boat Rentals, Inc. v. Ennia General Ins. Co.,* 872 F.2d 642, 647 (5th Cir. 1989); G. Gilmore and C. Black, *The Law of Admiralty* §§4-14. to 4-19., at 229-39 (2d ed. 1975). Despite this contractual language, Plaintiff argues that the United States was the owner *pro hac vice* of the vessel or was guilty of active negligence. Neither of which is applicable here.

There has been no evidence shown to the Court to support's Plaintiff's theory that the United States was an owner *pro hac vice* of the *Bonnyman*. The phrase "owner pro hac vice" has been explained "to indicate on who 'stands in the place of the owner for the voyage or service contemplated and bears the owner's responsibilities, even though the latter remains the legal owner of the vessel.'" *Matute v. Lloyd Bermuda Lines, Ltd.,* 931 F.2d 231, FN 2 (3rd Cir. 1991) *quoting Aird v. Weyerhaeuser S.S. Co.,* 169 F.2d 606, 610 (3rd Cir. 1948). Plaintiff asserts that the United States had the power to direct and dictate the vessel's cargo, mission and destinations and movements. (See

Doc. 52, p2). However, these powers do not make the United States an owner of the vessel. They are simply those powers that come within the realm of a time charter. See *Matute v. Lloyd Bermuda Lines, Ltd.,* 931 F.2d 231 at 235 ("Courts are hesitant to imply a relinquishment of possession and control by the owner of a ship absent the most explicit language indicating the owner completely and exclusively gives up 'possession, command, and navigation' of the vessel to the charterer.").

At the time of the accident, the *Bonnyman* was carrying vehicles, containers, and general cargo for the United States Marine Corps. (See Doc. 52-3, p3). Plaintiff was a shipboard mechanic whose job was to maintain the vehicles in a state of readiness. (See Doc. 52-4, pp 3-4, 7). Even if the Court were to find that Plaintiff was responsible for the cargo on board the *Bonnyman* and by way of this responsibility the United States some how became an employer of Plaintiff or somehow became responsible for the crew as they care for the cargo, the Court still could not find that the United States was actively negligent. Plaintiff was not hurt while maintaining the vehicles on the vessel, i.e., the cargo. Instead he was injured while returning from shore leave on a part of the vessel that had nothing to do with the cargo. Thus, there has been no evidence shown that the United States was actively negligent. The exclusivity provision in the SIAA is not applicable to this matter.

      b.    The Public Vessel Act

Although it does not appear that the Sixth Circuit has specifically addressed this issue, other circuits have found that a privately owned vessel time charted to the United States is not a public vessel. See *Williams v. Central Gulf Lines*, 874 F.2d 1058, 1060 (5th Cir. 1989); *United States v. United Continental Tuna Corp.*, 425 U.S. 164, 174

(1976). This Court agrees. The Plaintiff cites to *Dearborn v. Mar Ship Operation*, 113 F.3d 995, 998 (9th Cir. 1997); however, *Dearborn* is distinguishable from the present case. There the vessel in question was a United States navy Ship, the *USNS Kane*, which was owned by the United States and operated by a private company. Here, the opposite is true. The *Bonnyman* is owned by a private company and only time chartered by the United States. Thus, it is not a public vessel.

III. Conclusion

For the foregoing reasons, the motion to dismiss and for summary judgment (Doc. 50) is GRANTED and the motion to stay proceedings (Doc. 57) is denied as MOOT.

**IT IS SO ORDERED**.

*s/Michael R. Barrett*
UNITED STATES DISTRICT JUDGE