UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

James R. Maddux,

    Plaintiff,

vs.

United States of America, et al.,

    Defendant.

Case No. 1:08-cv-442

Judge Michael R. Barrett

## OPINION & ORDER

This matter is before the Court pursuant to Defendants Maersk Line, Limited ("Maersk") and Expresser Transport Corporation's ("Expresser," or collectively "Moving Defendants") Motion for Summary Judgment. (Doc. 62.) Plaintiff, James R. Maddux, filed a Response in opposition (Doc. 69), and the Moving Defendants filed a Reply (Doc. 81).

Plaintiff brings claims of negligence and unseaworthiness under the Jones Act, the Public Vessels Act, the Suits in Admiralty Act, and under general civil and maritime law. (Doc. 44 ¶¶ 11, 18.) Plaintiff's action is alternatively brought under § 905(b) of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq*. (Doc. 44, 1.) For the reasons stated below, the Moving Defendants' Motion is **DENIED in part and still pending in part**.

**I. Background**

The facts construed in Plaintiff's favor are as follows. Plaintiff was employed as a seaman on the *M/V 1st Lieutenant Alex Bonnyman* ("*Bonnyman*" or "vessel"). The

1

*Bonnyman* carried vehicles, containers, and general cargo for the United States Marine Corps. (Doc. 52-3, 3.) Plaintiff was a shipboard mechanic whose job was to maintain the vehicles in a state of readiness. (Doc. 52-4, 3–4, 7.)

Plaintiff was injured while the vessel was moored in Guam. (Doc. 44 ¶ 8.) While returning from shore leave, Plaintiff fell from a stairway and into a safety net that was defective and improperly rigged causing Plaintiff to fall fifteen feet to the deck below. Plaintiff suffered a complete spinal cord injury at T10-12 and has been rendered a paraplegic. (Doc 44 ¶ 9.)

The *Bonnyman* was the subject of a time-charter contract between the United States government, as charterer, and Expresser, as contractor. Expresser is a subsidiary of Maersk, and Maersk was the operator of the vessel. Plaintiff was a contracted employee of Honeywell Technology Solutions, Inc. ("Honeywell"). (Doc. 62, 2.) Honeywell was his direct employer in relation to his work as a mechanic, but he also had duties to Maersk, the vessel operator. (Doc. 69, 12.) Maersk was in charge of the office-side management of the vessel. This included responsibility for safety, which in turn included responsibility for training Plaintiff to use firefighting equipment and lifeboats. Specifically, Maersk controlled Plaintiff's participation in safety drills, fire drills, lifeboat drills, security drills, and first-aid drills. (Doc. 69, 13–14.)

Plaintiff alleges that Defendants Maersk and Expresser are liable for his injuries under to the Jones Act and the general maritime law of the United States, or in the alternative the Longshore and Harbor Workers' Compensation Act. More specifically, Plaintiff alleges that Honeywell, Maersk, and Expresser were negligent (Doc. 44 ¶ 11) and that the *Bonnyman* was unseaworthy (Doc. 44 ¶ 18). Plaintiff further claims that

Defendants are liable for his injuries under the Jones Act (Doc. 44 ¶ 11), for maintenance and cure under general maritime law (Doc. 44 ¶ 25), and for punitive damages for willful failure to maintain a seaworthy vessel.  (Doc. 44 ¶¶ 11, 25, § VIII). Plaintiff seeks damages for permanent disability and paralysis, pain and suffering, past and future medical expenses, loss of wages and benefits, maintenance and cure, attorney's fees, and punitive damages.  (Doc. 44 ¶¶ 21, 25, § VIII.)

In their Motion for Summary Judgment, Defendants Maersk and Expresser argue that because Plaintiff was employed by Honeywell, he can only assert liability claims against Honeywell.  Maersk or Expresser did not employ Plaintiff so they argue that they are not liable as a matter of law.  (Doc. 62, 4–6.)  Defendants also argue that punitive damages for unseaworthiness are unavailable as a matter of law, or in the alternative, that Plaintiff has failed to show evidence of any punitive conduct.  (Doc. 62, 6–8.)  In response, Plaintiff argues that a question of fact exists about who was his employer.  (Doc. 69, 5.)  He claims to have been an employee of Honeywell as well as a borrowed servant of Maersk and Expresser.  (Doc. 69, 14.)  The Moving Defendants' Reply argues that neither Maersk nor Expresser exercised control over how Plaintiff did his job, so therefore he was not a borrowed servant.  (Doc. 81, 2.)

**II. Analysis**

    **A. Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(c)(2). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Once the moving party has met its burden of production, the non-moving party cannot rest on his or her pleadings, but must present significant probative evidence in support of his or her complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* at 252. Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### B. Plaintiff's Employer

The Moving Defendants first argue that they are not liable under the Jones Act, for maintenance and cure, or for punitive damages or attorney's fees for failure to pay maintenance and cure because Plaintiff's employer was Honeywell—Maersk and Expresser never employed Plaintiff. (Doc. 62, 4–6.) (Note that Honeywell has not joined their fellow Defendants, Maersk and Expresser, in their Motion for Summary Judgment.) Plaintiff's Response argues that a question of fact exists about who was his employer because he was a borrowed servant of Maersk and Expresser. (Doc. 69, 5, 14.)

4

The Jones Act, which provides a cause of action against an injured seaman's employer, states:

> A seaman injured in the course of employment or, if the seaman dies from the injury, the personal representative of the seaman may elect to bring a civil action at law, with the right of trial by jury, against **the employer**. Laws of the United States regulating recovery for personal injury to, or death of, a railway employee apply to an action under this section.

46 U.S.C. § 30104 (emphasis added).

In determining who is a seaman's employer is under the Jones Act, courts have come to varying conclusions.[1] Some courts have held that a seaman may have more than one employer. *Savard v. Marine Contracting, Inc.*, 471 F.2d 536, 541 (2d Cir. 1972) (holding that more than one individual could be seaman's employer under the Jones Act); *Kyriakos v. Polemis*, 63 F. Supp. 19, 21–22 (D.C.N.Y. 1945) (holding that where the true vessel owners were so concealed or confused all defendants could be considered the seaman's employers); *Armit v. Loveland*, 115 F.2d 308, 314 (3d Cir. 1940) (holding that seaman may have had more than one employer where it was difficult to determine the true employer); *Francis v. Pan American Trinidad Oil Co.*, 59 F.R.D. 631, 635 (D.C. Del. 1973) (holding that under certain circumstances an employee of one employer may have been, for Jones Act purposes, an employee of a second employer under the borrowed-servant doctrine); *Spinks v. Chevron Oil Co.*, 507 F.2d 216, 225 (5th Cir. 1975) (holding that seaman could have been both the immediate employee of one entity and the borrowed servant of another); *Toups v. Archer-Daniels-Midland Co.*, 155 F.R.D. 588, 589 (S.D. Tex. 1994) (holding that a Jones Act plaintiff

---

[1] For more detail on this topic, see Kathleen M. Dorr, Annotation, *Who is "Owner" of Vessel or "Employer" of Seaman for Maritime Purposes*, 95 A.L.R. Fed. 636 (1989).

could establish an employment relationship by proving that he was a borrowed servant). Some courts have held that a seaman may sue only one entity as an employer. *Cosmopolitan Shipping Co. v. McAllister*, 337 U.S. 783, 791 (1949) (holding that under the Jones Act only one entity could be sued as an employer); *Mahramas v. Am. Exp. Isbrandtsen Lines, Inc.*, 475 F.2d 165, 170 (2d Cir. 1973) (holding that under the Jones Act only one entity could be sued as a seaman's employer); *Hickman v. Ohio Barge Line, Inc.*, 376 F. Supp. 1092, 1094 (W.D. Pa. 1974) (holding that only one entity could be sued as an employer under the Jones Act or for maintenance and cure); *Cont'l Cas. Co. v. Thorden Line*, 186 F.2d 992, 995 (4th Cir. 1951) (holding that only one entity could be sued as an employer under the Jones Act). Other courts have allowed a seaman to sue several entities in the alternative so long as a full recovery is collected from only one entity. *Kyriakos v. Polemis*, 63 F. Supp. 19, 21–22 (D.C.N.Y. 1945) (holding that multiple employers responsible for confusion as to who was the true employer should bear the burden of dispelling that confusing by setting liabilities between themselves); *Armit v. Loveland*, 115 F.2d 308, 314 (3d Cir. 1940) (holding that where it was difficult to determine seaman's true employer the multiple employers should set liability between themselves); *Spinks v. Chevron Oil Co.*, 507 F.2d 216, 225 (5th Cir. 1975) (holding that two employers could be sued in the alternative leaving it to the defendants to sort out which would bear the final costs of recovery); *Allan v. Brown & Root, Inc.*, 491 F. Supp. 398, 401 (S.D. Tex. 1980) (holding that while the Jones Act provides for recovery only against a seaman's employer, more than one employer may be sued in the alternative).

The Sixth Circuit touched on this issue in *Perkins v. Union Barge Line Corp.*, 373

F.2d 714 (6th Cir. 1967). In *Perkins*, the plaintiff, who was an employee of a scrap yard, was loading a barge owned by the defendant. He was injured after being ordered onto defendant's barge by his employer (who was not a party to the case). The district court dismissed the plaintiff's Jones Act claim for failure to state a cause of action. *Id.* at 715.

In ruling that plaintiff's Jones Act claim was validly dismissed, the Sixth Circuit in *Perkins* stated that, "[t]he Jones Act is an employer liability act and employee rights thereunder do not extend to suits against a third party who is not the employer." *Id.* Because the defendant in that case was not his employer and because his employer was not a party to the action, dismissal was proper. The Court further stated, "[plaintiff] does not allege that [defendant] was his employer in fact, and his pleaded facts do not state a case under 'the loaned servant doctrine.'" *Id.* at 716. This case seems to put the Sixth Circuit in the above group of cases that rule a seaman may only have one employer and may only sue one entity. However, *Perkins* did not address that question directly and the Sixth Circuit has never addressed whether a seaman may sue several entities in the alternative. What is clear from *Perkins* is that a seaman may sue an entity alleging that he was an employee under the loaned-servant doctrine (which is referred to herein as the borrowed-servant doctrine). *Id.*

The Moving Defendants rely on *Cosmopolitan Shipping Co. v. McAllister*, 337 U.S. 783 (1949), and the cases that follow it in arguing that the Jones Act requires an employee-employer relationship before liability can attach. The Sixth Circuit in *Perkins*, and this Court, agrees. Only an employer is liable to an injured seaman under the Jones Act. *Perkins*, 373 F.2d at 715; *Cosmopolitan*, 337 U.S. at 789–90. However, the Moving Defendants do not argue the question the Sixth Circuit has never reached and

7

which so many other courts are in disagreement about—whether a seaman may sue several entities in the alternative as Plaintiff is doing here.  Rather, the Moving Defendants argue that, "[t]here is no evidence to support the application of the borrowed servant doctrine . . . . [N]either Maersk, nor Expresser exercised any control over the manner in which Honeywell instructed its employees, including Plaintiff, to perform their duties."  (Doc. 81, 1–2.)  Therefore, the issue here becomes whether "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to" whether the Moving Defendants may have been Plaintiff's employer under the borrowed-servant doctrine.  Fed. R. Civ. P. 56(c)(2).

### 1. The Borrowed-Servant Doctrine

The borrowed-servant doctrine states that when one party lends an employee to another to do a particular job, that employee is treated as the employee of the party to whom he has been loaned.  *Medina v. Harold J. Becker Co.*, 840 N.E. 2d 1112, 1122 (Ct. App. Ohio 2005); *see also* Restatement (Second) of agency § 227 (1958) ("A servant directed or permitted by his master to perform services for another may become the servant of such other in performing the services.  He may become the other's servant as to some acts and not as to others.")  In arguing that the borrowed-servant doctrine does not apply, the Moving Defendants first state that the issue is not properly before this Court and is not ripe for consideration because, "nowhere in the three Complaints filed by Plaintiff did he ever claim a right to recover pursuant to the borrowed servant doctrine."  (Doc. 81, 2.)  That may be the case, but Plaintiff's Complaint does allege that, "Plaintiff was employed by Defendants."  (Doc. 44 ¶ 8.)  It is in "the discovery and disclosure materials on file, and any affidavits" of Plaintiff that the

8

borrowed-servant doctrine is raised.  Fed. R. Civ. P. 56(c)(2).  As such, this issue is properly before the Court.

The Moving Defendants go on to argue that the evidence compels rejection of the borrowed-servant doctrine here because Maersk or Expresser did not exercise control over Plaintiff, supervise his work, issue paychecks to him, or have the right to make decisions about his employment.  (Doc. 81, 1–2.)  In response, Plaintiff points out that the Sixth Circuit has recently addressed the borrowed-servant doctrine in the FELA context, which is incorporated into the Jones Act.  46 U.S.C. § 30104 ("Laws of the United States regulating recovery for personal injury to, or death of, a railway employee apply to an action under this section.").

In *Kelley v. Southern Pacific Co.*, 419 U.S. 318 (1974), the United States Supreme Court stated:

> Under common-law principles, there are basically three methods by which a plaintiff can establish his 'employment' with a rail carrier for FELA purposes even while he is nominally employed by another.  First, the employee could be serving as the borrowed servant of the railroad at the time of his injury.  Second, he could be deemed to be acting for two masters simultaneously.  Finally, he could be a subservant of a company that was in turn a servant of the railroad.

419 U.S. at 324 (internal citations omitted).  As the Sixth Circuit recognized in *Campbell v. BNSF Railway Co.*, 600 F.3d 667 (6th Cir. 2010), the Supreme Court in *Kelley* relied on the Restatement (Second) of Agency to analyze the master-servant relationship.  The Sixth Circuit in *Campbell* used § 220(1) of the Restatement (Second) of Agency to define a servant as, "'a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is

9

subject to the other's control or right to control.'" 600 F.3d at 672.  The Court further recognized ten Restatement factors used to apply that definition.[2]  Plaintiff relies on a substantially similar set of nine factors from the Fifth Circuit used to determine whether a Jones Act seaman is a borrowed servant.  (Doc. 69, 11.)  But regardless of which list of particular factors are cited, the most important element is control.  As the Sixth Circuit stated, "[t]he test is whether 'the employer retained control, or the right to control, the mode and manner of doing the work contracted for.'"  *Beddia v. Goodin*, 957 F.2d 254, 257 (6th Cir. 1992); *see also Medina v. Harold J. Becker Co.*, 840 N.E. 2d 1112, 1122 (Ct. App. Ohio 2005).

Here, Plaintiff has shown sufficient facts to indicate that the Moving Defendants had actual control and the right to control Plaintiff's mode and manner of work.  While Honeywell controlled his work as a mechanic, Plaintiff had many duties owed directly to Maersk, and more specifically, duties that he owed directly to the captain of the vessel, Captain Tankersley, who was a Maersk employee.  As Plaintiff's exhibits show, Maersk had responsibility for the vessel's safety.  Pursuant to this responsibility, Maersk controlled Plaintiff's participation in safety drills, fire drills, lifeboat drills, security drills, and first-aid drills.  (Doc. 69, 13–14; Doc. 69-2, 4.)

The Moving Defendant's protestations that, "Plaintiff, as a Honeywell employee, did not have any duties to the *M/V Bonnyman*," (Doc. 81, 3) is flatly contradicted by Captain Tankersley's testimony.  Captain Tankersley specifically stated that Maersk

---

[2] The factors include: (1) the extent of control which, by the agreement, the master may exercise over the details of the work; (2) whether or not the one employed is engaged in a distinct occupation or business; (3) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; (4) the skill required in the particular occupation; (5) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work; (6) the length of time for which the person is employed; (7) the method of payment, whether by the time or by the job; (8) whether or not the work is a part of the regular business of the employer; (9) whether or not the parties believe they are creating the relation of master and servant; and (10) whether the principal is or is not in business.

controlled Plaintiff's training in the use of firefighting equipment and that if a fire broke out, Plaintiff would have had certain responsibilities in responding to that fire—responsibilities owed to Maersk. Furthermore, Maersk trained Plaintiff on the proper deployment of lifeboats, and he was required to participate in lifeboat drills under Maersk's control. (Doc. 69-2, 5–6.) In total, Plaintiff was not a mere passenger on the *Bonnyman*. He was subject to a certain level of control, actual and potential, by the vessel's captain. Whether this is enough control to make Maersk and Expresser Plaintiff's employer rather than Honeywell is disputable to be sure, but based on the motion-for-summary-judgment standard where all reasonable inferences are drawn in favor of the nonmoving party, the Moving Defendants have not borne their burden of showing an absence of evidence to support Plaintiff's case. *Celotex*, 477 U.S. at 325. A jury could reasonably find for Plaintiff on the evidence he has presented. Plaintiff can therefore assert liability against all three Defendants, and the Moving Defendant's Motion for Summary Judgment must therefore be DENIED.

### C. Punitive Damages for Unseaworthiness

Count two of Plaintiff's Complaint alleges that his injuries were caused by the *Bonnyman*'s unseaworthiness and that he is entitled to punitive damages because it was a willful violation. (Doc. 44 ¶¶ 17–20, § VIII.) The Moving Defendants argue that punitive damages for unseaworthiness are unavailable as a matter of law. In the alternative, they argue that Plaintiff has failed to show evidence of any punitive conduct. (Doc. 62, 6–8.)

The Court declines to address this issue at the present time. The Court will issue an opinion and order regarding this issue before the trial. No additional briefings by the

11

parties are required.  Therefore, summary judgment as to Plaintiff's claim for punitive damages for willful failure to maintain a seaworthy vessel remains pending before this Court.

### III. Conclusion

Based on the foregoing, it is hereby ORDERED that the Moving Defendant's, Motion for Summary Judgment is **DENIED in part and still pending in part**.  The Moving Defendants' Motion is DENIED as to liability under the Jones Act, for maintenance and cure, and for punitive damages and attorney's fees for failure to pay maintenance and cure, but still pending as to Plaintiff's claim for punitive damages for willful failure to maintain a seaworthy vessel.

**IT IS SO ORDERED.**

*s/Michael R. Barrett*
UNITED STATES DISTRICT JUDGE